United States District Court
Southern District of Texas
**ENTERED**
October 21, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ERIC LYNDELL MOORE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-CV-2752** |
| | § | |
| **JACKSON WALKER LLP, et al.,** | § | |
| **Defendants.** | § | |

## ORDER AND OMNIBUS OPINION

Before the Court are Defendants Brigade Capital Management, LP, H/2 Capital Partners LLC, Owl Creek Asset Management, LP, Penney Intermediate Holdings LLC, and Silver Point Capital, LP's Motion to Dismiss the Second Amended Complaint [ECF No. 50]; Defendant Jackson Walker, LLC's Motion to Dismiss [ECF No. 63]; and *pro se* Plaintiff Eric Lyndell Moore's Partial Motion for Summary Judgment [ECF No. 46], Opposed Motion for Accounting and Notice of Rejected Non-Monetary Settlement Offer [ECF No. 85], and Motion for Judicial Notice [ECF No. 88]. After reviewing the case law and relevant briefings, the Court **DISMISSES** this action and **IMPOSES SANCTIONS** under Federal Rule of Civil Procedure 11 on the Plaintiff, Eric Lyndell Moore.

## I. Background

### A. Factual Background

This case arises from the legal thicket of bankruptcy. On May 15, 2020, amid a global pandemic, J.C. Penney Direct Marketing Services, LLC and its affiliates (collectively, the "JCPenney Debtors"), filed for chapter 11 bankruptcy.[1] (*See* No. 20-20182 (ECF No. 1)); *see also*

[1] The Court takes judicial notice of the bankruptcy record underlying this case as a matter of public record. *PNC Bank v. Ruiz*, No. 22-50584, 2023 WL 3340078, at *4 (5th Cir. 2023) (unpublished) (per curiam) (holding a district court did not err in taking judicial notice of bankruptcy records as "all bankruptcy records are matters of public record."); *ASARCO, LLC v. Mont. Res., Inc.*, 54 B.R. 168, 178–79 (S.D. Tex. 2013) ("On a dismissal motion, the court … may

(ECF Nos. 30 at 5; 63 at 3.)[2] The JCPenney Debtors hired Defendant Jackson Walker LLP ("Jackson Walker") as co-counsel and conflicts counsel. (ECF No. 63 at 6.) Pertinent to this suit are two groups of creditors. First is the DIP Lender Group—a group of secured lenders who extended post-petition financing to the JCPenney Debtors in exchange for a seat at the top of the bankruptcy payment hierarchy. Defendants H/2 Capital Partners LLC, Brigade Capital Management, LP, Silver Point Capital, LP, and Owl Creek Asset Management, LP (collectively, the "DIP Lender Defendants"),[3] among others, were part of the DIP Lender Group and held first lien debt in either term loans or notes, or both.[4] The second is the Minority Group—a group of secured creditors who held first lien debt. Cetus Capital LLC ("Cetus") was a creditor in the Minority Group. The Plaintiff allegedly purchased his claims from Cetus years after the events described below. (ECF No. 50 at 21.)

Immediately after filing for chapter 11, the JCPenney Debtors entered into a restructuring support agreement ("RSA") with the DIP Lender Group, among others, to help alleviate nearly $5 billion in debt. (No. 20-20182 (ECF No. 25 at 11–12).) Under the RSA, JCPenney separated into two entities: (1) Defendant Penney Intermediate Holdings, LLC, an entity created to hold retail assets and function as the operating company ("Penney Intermediate Holdings"); and (2) former

---

also examine … matters of public record, and consideration of these documents does not require a conversion of the dismissal motion into one for summary judgment."). For the underlying chapter 11 bankruptcy, see *In re J.C. Penney Company, Inc., et al.*, No. 20-20182 (Bankr. S.D. Tex. May 15, 2020). In this Order, when citing filings in the bankruptcy, the Court will use the citation format "(No. 20-20182 (ECF No. [docket number]).)"; the Court will use the citation format "(ECF No. [docket number].)" when citing filings in this civil case.

[2] Page number citations in this document will correspond to the PDF page number of each respective document.

[3] The Defendant did not sue the entire DIP Lender Group. The Court refers to Defendants H/2 Capital Partners LLC, Brigade Capital Management, LP, Silver Point Capital, LP, and Owl Creek Asset Management, LP as the DIP Lender Defendants for clarity but acknowledges other creditors were within the group in the underlying bankruptcy.

[4] Throughout the bankruptcy proceedings, the DIP Lender Group had superpriority senior secured status. (No. 20-20182 (ECF No. 1293 at 4 n.5).) "The DIP Lender Group holds approximately 94% of the outstanding amount of DIP Loans and approximately 75% of the existing First Lien Debt." (No. 20-20182 (ECF No. 1633 at n.3).)

defendant Copper Property CTL Pass Through Trust ("Copper Trust"), a holding entity for JCPenney's real property assets (the "PropCo Assets"). (ECF Nos. 47; 30 at 57; 63 at 7.) These entities were sold pursuant to an asset purchase agreement ("APA") that allowed secured lenders—including the DIP Lender Group—to use, as consideration, a $1 billion credit bid. The credit bid amount was based on $900 million of DIP Debt and $100 million of First Lien Debt. (ECF No. 30 at 23, 64); (*see also* No. 20-20182 (ECF No. 1814 at 9).) Under the APA, secured lenders would receive distributions according to a pro rata share tied to their credit bid amount. The pro rata share distribution was allocated on a 90-to-10 basis, with secured lenders receiving 90 percent based on DIP debt and 10 percent based on First Lien Debt. (*See* No. 20-20184 (ECF No. 1591 at 12–13).) Put simply, each holder of an allowed DIP Debt claim and a First Lien Debt claim would receive their pro rata share from the consideration value allocated to their class under the APA.

Before the Bankruptcy Court approved the APA, however, the Minority Group objected to the credit bid's pro rata structure, contending it created a windfall recovery for the DIP Lender Group. (*See generally* No. 20-20182 (ECF Nos. 1621, 1633 at n.3).) The Minority Group withdrew its objection after it reached a settlement agreement (the "Settlement Agreement") with the JCPenney Debtors and DIP Lender Group, among various others party to the DIP Agreement.[5] (No. 20-20182 (ECF No. 1775 at *2–3)); *see also* (ECF No. 50-6.) With the objection withdrawn and a settlement reached, the Bankruptcy Court finally entered the Sale Order, on November 9, 2020, approving the APA and memorializing the Settlement Agreement.

With the Sale Order finalized, the PropCo Assets—which again, were JCPenney's real property assets—were transferred to Copper Trust, "free and clear of liens, claims, encumbrances, and interests" for liquidation. (ECF No. 50-5 at 2.) This meant that the Minority Group no longer

[5] "DIP Agreement" in this Order refers to the Superpriority Senior Secured Debtor-in-Possession Credit and Guaranty Agreement as used in the Settlement Agreement. (ECF No. 50-6 at 2–3.)

had liens on the PropCo Assets; instead, they received freely tradable and transferable trust certificates. (*Id.* at 2–3.) The trust certificates entitled holders to distributions from Copper Trust, and those distributions follow the 90-to-10 credit bid pro rata scheme that the DIP Lender Group and Minority Group agreed to as part of the Settlement Agreement. Cetus, as a Minority Group creditor, was issued Copper Trust certificates. (ECF No. 50 at 21.) The Plaintiff supposedly purchased some amount of Cetus's Copper Trust certificates through an entity called the Barnett U.S. Equity Fund around October 2023—two years after the Confirmation Order and Sale Order were finalized. (No. 20-20184 (ECF No. 1591 at 13).)

On July 25, 2025, Copper Trust announced a sale agreement with former-defendant Onyx Partners, LLC ("Onyx")[6] to sell all remaining PropCo Assets in the Copper Trust portfolio. (ECF No. 30 at 27.) The Plaintiff claims he is entitled to a portion of these sale proceeds because he purchased a portion of Cetus's debt.[7] The problem is that the Plaintiff believes he should receive ***more*** than his certificate entitlement and uses this case to resurrect the Minority Group's arguments prior to the Settlement Agreement. In doing so, the Plaintiff seeks seven declarations that would effectively rewrite the underlying bankruptcy.

**B. Procedural Background**

This is but one case in a series of actions the Plaintiff has filed in an attempt to rewrite the underlying bankruptcy. The Plaintiff started his campaign in the Bankruptcy Court with a Motion to Enforce the Sale Order [*see* No. 20-20184 (ECF No. 1533)], and after the motion was denied,

---

[6] The Plaintiff refers to Onyx as Onyx Partners, LLC, but Onyx refers to itself—and all records suggest—that Onyx's proper name is Onyx Partners, Ltd. *See, e.g.*, ONYX PARTNERS LTD, https://onyxpartnersltd.com (last visited Mar. 13, 2026).

[7] The Court is unsure of the exact nature of the Plaintiff's holdings. It appears that Barnett U.S. Equity Fund purchased Cetus First Lien Debt. (*See* No. 20-20184 (ECF No. 1554-1).) In his briefing, however, the Plaintiff does not allege how much debt he holds.

escalated to an adversary proceeding seeking four declarations related to the Sale Order [*see* No. 20-20184 (ECF No. 1627)]. The Plaintiff voluntarily dismissed his adversary proceeding after filing his original complaint here. (*See Moore v. Copper Prop. CTL Pass Through Tr.*, Adv. No. 24-02006 (Bankr. S.D. Tex. Aug. 18, 2025), (ECF No. 24).)

Here, the Plaintiff attempted to plead a meritorious case several times. The Plaintiff amended his original complaint once as a matter of right [ECF No. 23] and then, without the Court's leave or the Defendants' consent, filed his Second Amended Complaint. (ECF No. 30.) The DIP Lender Defendants and Defendant Penney Intermediate Holdings moved to strike the Second Amended Complaint. (ECF No. 33.) While the Motion to Strike was pending, the Plaintiff filed an Emergency Motion for a Temporary Restraining Order ("TRO"), asking this Court to enjoin the Bankruptcy Court from imposing sanctions related to a civil contempt order entered against him. (ECF No. 39.) This Court denied the Motion to Strike [ECF No. 40] and the Plaintiff's TRO [ECF No. 48]. The Plaintiff then moved to dismiss former defendants Copper Trust and Onyx with prejudice from this action. (ECF Nos. 44, 49.) They were dismissed with prejudice in September 2025. (ECF Nos. 47, 53.)

Immediately after their dismissal, the Plaintiff sued former defendants Copper Trust and Onyx ***again*** in another civil action in the Southern District of Texas based on the same events at issue here. (ECF No. 47; *see also Moore v. Copper Prop. CTL Pass Through Tr., et al.*, No. 4:25-CV-4246-AM (S.D. Tex. Sept. 8, 2025).) Additionally, after the Honorable Christopher M. Lopez, U.S. Bankruptcy Judge for the Southern District of Texas, held the Plaintiff in civil contempt in bankruptcy court, the Plaintiff sued Judge Lopez, alleging he "harbors animus towards bondholders and creditors" and accusing him of depriving the Plaintiff of procedural due process.

(No. 20-20184 (ECF No. 1755 at 4).)[8] Simply put, the Plaintiff has made a career out of suing parties and judges associated with the JCPenney bankruptcy.[9]

Fighting multiple actions across two courts, the DIP Lender Defendants and Defendant Penney Intermediate Holdings moved for Federal Rule of Civil Procedure 11 sanctions against the Plaintiff. (ECF No. 64.) The Plaintiff responded to the motion for sanctions [ECF No. 75] and moved for cross-sanctions, and the moving Defendants replied [ECF No. 77]. The Court then *sua sponte* issued a Show Cause Order for the Plaintiff on February 20, 2026, ordering the Plaintiff to explain why additional Rule 11 sanctions should not issue given the number of "legal mischaracterizations" and citations to "utterly fictitious case law[.]" (ECF No. 94.) The Plaintiff timely responded [ECF No. 95], dismissed Counts V and VI from his Second Amended Complaint [ECF No. 96], attempted to amend his Second Amended Complaint [ECF No. 97], and withdrew thirteen erroneous case citations from his various filings [ECF No. 98].

As the case stands, the Second Amended Complaint, without Counts V and VI, is the operative pleading before the Court. Only the following defendants remain: the DIP Lender Defendants, Penney Intermediate Holdings, and Jackson Walker. The Court now turns to the pending Motions to Dismiss [ECF Nos. 50, 63].

## II. MOTION TO DISMISS

### A. Legal Standard

The remaining defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6). (*See* ECF Nos. 50, 63.) When a motion to dismiss raises arguments under both Rule

[8] That case is before the Honorable Andrew S. Hanen, U.S. District Judge for the Southern District of Texas. (*See Moore v. Lopez*, No. 4:25-CV-4541 (S.D. Tex. Sept. 24, 2025).)

[9] This is not the first bankruptcy case the Plaintiff has disrupted. In another bankruptcy, the bankruptcy court held that the Plaintiff was unjustly enriched and had a duty to disclose his prior criminal conviction when entering into a consultancy agreement with the Debtor. *In re Herrera-Edwards*, 578 B.R. 853, 865–66 (Bankr. M.D. Fla. 2017); *see also Moore v. Herrera-Edwards*, No. 8:15-CV-446, 2016 WL 1108962 (M.D. Fla. Mar. 18, 2016).

12(b)(1) and Rule 12(b)(6), district courts should consider the jurisdictional attack under Rule 12(b)(1) first. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Rule 12(b)(1) motions challenge the subject matter jurisdiction of the district court, with the burden of proof on the party asserting jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). A district court's review for subject matter jurisdiction may include: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161 (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). A court need not take the plaintiff's facts as true but "can decide [the] disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

**B. Discussion**

This case must "begin—and end—with standing." *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "Standing is a threshold subject matter jurisdiction requirement." *E-Sys. Design, Inc. v. Mentor Graphics Corp.*, No. 17-CV-0682, 2018 WL 1625723, at *1 (E.D. Tex. Apr. 4, 2018) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 559–60 (1992)). Because the Plaintiff brings this action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), he may seek declaratory relief only if he has standing under the statute. This requires an "actual controversy." 28 U.S.C. § 2201(a). Here, no controversy exists.

Under the Declaratory Judgment Act, a federal court may exercise its discretion to "declare the rights and other legal relations of any interested party." *Id.* "The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty." *See Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780

(5th Cir. 1949). The Supreme Court reiterated in *Medimmune, Inc. v. Genentech*, *Inc.*, "that the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." 549 U.S. 118, 126–27 (2007) (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240 (1937)). Thus, an actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Yet the Act only allows courts to declare existing rights, status, or legal relationships as they exist; it does not allow courts to revise, alter, or modify those relationships. *See City of El Paso v. El Paso Ent.*, 382 F. App'x 361, 365 (5th Cir. 2010) (per curiam) ("By its very nature, a declaratory judgment seeks to determine the rights of the parties as they currently exist; it does not involve the modification or vacation of a prior judgment." (citation omitted)); *Newton v. Joseph*, No. 13-CV-510, 2015 WL 10793511, at *1 (E.D. Tex. Aug. 11, 2015) ("A suit for declaratory relief establishes existing rights, status, or other legal relationships; it cannot be used to revise, alter, or reform the parties' rights, status or relationships."), *report and recommendation adopted*, 2015 WL 10793699 (E.D. Tex. Sept. 23, 2015). That is the issue here. The Plaintiff does not ask this Court to declare his rights under the Settlement Agreement and Sale Order. Rather, he asks this Court to ***change the terms*** of the Settlement Agreement and Sale Order—terms that were settled long before the Plaintiff purchased a portion of Cetus's first lien debt.

For example, the Plaintiff directly attacks the asset sales, alleging the credit bid amount was too low, the PropCo Assets should have been valued at fair market value, the pre-plan Settlement Agreement was impermissible, and the operating company assets were transferred to

Defendant Penney Intermediate Holdings for zero consideration. (*See* ECF No. 30 at 28, 31, 33, 34, 36.) He also purports to have enforceable liens on the Copper Trust assets. (*Id.* at 35.) A declaration touching on any of those allegations would not declare the Plaintiff's rights under the Sale Order as written but would result in this Court turning the clock back to 2020, unilaterally renegotiating the APA, and decimating the Settlement Agreement. This necessarily modifies, if not invalidates, the Bankruptcy Court's Sale Order and confirmed chapter 11 plan. This Court cannot—and indeed will not—use its declaratory discretion to modify or vacate agreements reached between the JCPenney Debtors and its creditors or final bankruptcy orders entered years before the Plaintiff became a secondary purchaser of Cetus's debt.[10]

It is on this point that the Plaintiff's case truly falters. Cetus agreed to the pro rata distribution scheme and the APA terms when it ***chose*** to enter the Settlement Agreement. The Plaintiff freely ***chose*** to acquire Cetus's debt ***years*** after these agreements and orders took effect. The Plaintiff purchased Cetus's debt, fully aware of what that entails. In other words, there is no controversy here, and buyer's remorse cannot create a controversy where one does not otherwise exist.

The Plaintiff's last claim under the Act, however, is different from the rest. There, the Plaintiff seeks a declaration that Defendant Jackson Walker breached its fiduciary duties to the creditors in failing to disclose the then-clandestine relationship between former judge David R. Jones, and then-Jackson Walker bankruptcy partner, Elizabeth Freeman. (ECF No. 30 at 44–49.) This Court is all too familiar with the claims against Defendant Jackson Walker arising from the

[10] The deadline to appeal any such bankruptcy court order is also long gone. FED. R. BANKR. P. 8002(a)(1) ("[A] notice of appeal must be filed with the bankruptcy clerk within 14 days after the judgment, order, or decree to be appealed is entered."). If the Plaintiff wanted to attempt to revoke the Confirmation Order for fraud (which incorporated the Sale Order and sold assets *free and clear* under § 363 of the Bankruptcy Code), that deadline was June 14, 2021. (ECF No. 50 at 20); *see also* 11 U.S.C. § 1144 (providing that a "party in interest" may seek to revoke a confirmation order "180 days after the date of the entry of the order").

David R. Jones and Elizabeth Freeman entanglement. *See, e.g.*, *Van Deelen v. Jone*s, No. 23-CV-3729, 2024 WL 3852349 (S.D. Tex. Aug. 16, 2024). The merits of such claims aside, the Plaintiff lacks standing to ask this Court to declare that Defendant Jackson Walker breached its fiduciary duties to the ***estate and its creditors***.[11] *See In re SunEdison, Inc.*, No. 16-10992, 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019) (A "successor to a creditor[] is not a party in interest and lacks prudential standing to assert derivative claims arising from injuries to the debtor or its estate, including claims based on fraud on the court."). Under this chapter 11 plan, the proper plaintiff to raise such claims is the Plan Administrator.[12] (ECF No. 50-4 at 36) ("The Plan Administrator shall retain and may exclusively enforce any and all Causes of Action.") Since the Plaintiff is not the Plan Administrator, he lacks standing to pursue such a declaration.

In sum, the Plaintiff cannot create a controversy where one does not exist. As Judge Lopez already told the Plaintiff: "[He] is entitled to no greater rights than Cetus." (ECF No. 50-7 at 21.) Cetus consented to the Settlement Agreement effectuated in the Sale Order and the Confirmation Order. The Plaintiff's discontent with those final bankruptcy orders does create a live controversy—particularly in the bankruptcy context where "finality is essential to the fashioning of effective remedies." *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993); *see MedImmune, Inc.*, 549 U.S. at 127 (finding that without an actual, live controversy, any judgment rendered would effectively be "an opinion advising what the law would be upon a hypothetical state of facts"). This Court cannot rewrite these final bankruptcy orders simply because the Plaintiff regrets his purchase. Buyer's remorse does not manufacture standing. The Court

---

[11] As Defendant Jackson Walker points out, the Plaintiff does not bring a breach of fiduciary duty claim, only a request for declaratory judgment. (ECF No. 63 at 45.)

[12] The Plan Administrator has, in fact, brought a similar claim, and that case is currently pending before this Court. *See In re: Professional Fee Matters Concerning the Jackson Walker Law Firm*, No. 4:23-CV-4787 (S.D. Tex. Dec. 21, 2023).

therefore **GRANTS** the Defendants' Motions to Dismiss [ECF Nos. 50, 63] and **DENIES as MOOT** the Plaintiff's Motion for Partial Summary Judgment [ECF No. 46], Opposed Motion for Accounting and Notice of Rejected Non-Monetary Settlement Offer [ECF No. 85], and Motion for Judicial Notice [ECF No. 88]. This leaves only the DIP Lender Defendants and Defendant Penney Intermediate Holdings' Motion for Sanctions. (ECF No. 64.)

## III. MOTION FOR SANCTIONS

### A. Legal Standard

Under Federal Rule of Civil Procedure 11, any time a party presents "a pleading, written motion, or other paper" to a court, that party "certifies that to the best of the [party's] knowledge, information, and belief, … (1) it is not being presented for any improper purpose, … (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument[,] … (3) the factual contentions have evidentiary support.[,] … or (4) the denials of factual contentions are warranted on the evidence …." FED. R. CIV. P. 11(b). Courts in the Fifth Circuit apply "an objective, not subjective, standard of reasonableness" when determining whether a Rule 11 violation has occurred. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (*en banc*).

If a party violates Rule 11(b), a court may impose any appropriate sanctions on the violating party "after [giving] notice and a reasonable opportunity to respond[.]" FED. R. CIV. P. 11(c)(1). A court may order a violating party to pay a penalty to the court, or "if imposed on motion and warranted for effective deterrence, . . . *to the movant*[,] . . . of the reasonable attorney's fees and other expenses directly resulting from the violation." FED. R. CIV. P. 11(c)(4).

Although both nonmonetary and certain monetary sanctions are available under Rule 11, a court must limit sanctions to what suffices to "deter repetition" of, or conduct comparable to, the

sanctionable conduct. *Id.* Where a court invokes Rule 11 on its own initiative, it can only impose monetary sanctions when it has issued a "show-cause order under Rule 11(c)(3)[.]" FED. R. CIV. P. 11(c)(5)(B). What is more, Rule 11, and thus the sanctions it allows, applies to experienced lawyers and *pro se* litigants alike. *See Fermin v. Nat'l Home Life Assurance Co.*, 15 F.3d 180, 1994 WL 24922 at *2 (5th Cir. 1994) ("[A]ppearance pro se does not affect the applicability of Rule 11.").

**B. Discussion**

In this case, the Court imposes sanctions both *sua sponte* and at Defendants' request. (*See* ECF Nos. 64, 94). The Court finds sanctions necessary because the Plaintiff violated Rule 11(b) in three ways. First, the Plaintiff filed pleadings with an "improper purpose," violating Rule 11(b)(1). Second, the Plaintiff filed pleadings with factual contentions without any evidentiary support, violating Rule 11(b)(3). Third, the Plaintiff cited cases for propositions for which they did not stand and referenced utterly fictitious—and wrong—case law throughout his pleadings, violating Rule 11(b)(2). (*See* ECF No. 94.) The Court addresses each violation in turn below.

**i. The Plaintiff Violated Rules 11(b)(1) and Rule 11(b)(3).**

First, the Court sanctions the Plaintiff, pursuant to the Defendants' Motion for Sanctions, for presenting his Second Amended Complaint for an "improper purpose" in violation of Rule 11(b)(1), and for presenting pleadings including factual contentions which lack evidentiary support in violation of Rule 11(b)(3). FED. R. CIV. P. 11(b)(1), (3). Under Rule 11(b)(1), a party's signature on a pleading, motion, or other paper constitutes a certificate that the pleading is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." FED. R. CIV. P. 11(b)(1). Under Rule 11(b)(3), a party must ensure "after an inquiry reasonable under the circumstances" that "the factual contentions have

evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" FED. R. CIV. P. 11(b)(3).

District courts may consider previous litigation history when fashioning a sanction under 11(b)(1). *See Cervantes v. Ocwen Loan Serv., LLC*, No. 19-CV-7, 2019 WL 6003129, at *9 (S.D. Tex. Aug. 28, 2019) (considering a plaintiff's prior three lawsuits based on the same transaction – after twice having dismissals with prejudice affirmed in the Fifth Circuit – in formulating a sanction), *report and recommendation adopted*, 2019 WL 13190649 (S.D. Tex. Oct. 7, 2019); *Trump v. Clinton*, 161 F.4th 671, 690 (11th Cir. 2025) (affirming district court's sanctions when the court took into account a party's "pattern of misusing the courts" and similar litigation conduct in other cases). Under this standard, the Court finds the Plaintiff's behavior objectively unreasonable.

As to the Rule 11(b)(1) violation, both this Court and the Bankruptcy Court have found the allegations raised in the Second Amended Complaint without merit at least four times: through the Sale Order, the Confirmation Order, Judge Lopez's bench ruling, and this Court's recent order denying Plaintiff's temporary restraining order in his ***other*** lawsuit against former defendant Copper Trust—after he dismissed Copper Trust with prejudice in ***this*** suit. *See Moore v. Copper Prop. CTL Pass Through Tr., et al.*, No. 4:25-CV-4246 (S.D. Tex. Sept. 8, 2025) (Moses, J.), (ECF No. 55). With every judge that tells the Plaintiff his case lacks merit, the Plaintiff merely finds a new court to refile his case. It is a never-ending cycle.

The Plaintiff's multiple attempts to plead this case constitute objectively unreasonable harassment because multiple court orders have put the Plaintiff on notice that his case is without merit; yet he continues to press onward. (*See* ECF No. 48 ("It is clear from the record . . . that Judge Lopez granted the Contempt Order because the Plaintiff continuously disregarded final

orders in violation of the injunction set out by the confirmation plan.").) Yet the Plaintiff ***continues*** to raise the same allegations. At this point, three judges across two courts have told the Plaintiff his claims lack merit—he knew this before he even filed the instant complaint in this Court. Nothing the Plaintiff has filed in this case is objectively reasonable, and as a result, the Court finds sanctions under Rule 11(b)(1) appropriate.

The Court also sanctions the Plaintiff for violating Rule 11(b)(3), pursuant to the Defendants' Motion for Sanctions, because his pleadings include factual contentions lacking evidentiary support. FED. R. CIV. P. 11(b)(3). As this Court determined above—and as other courts already determined—the allegations within the Second Amended Complaint lack any evidentiary support in the underlying bankruptcy.[13] The Plaintiff's blanket contention that his factual assertions relate to "complex or unsettled issues" under bankruptcy law [ECF No. 75 at 6] is without support. In short, there are no new factual contentions to resolve. Sanctions at such a time are appropriate.

**ii. The Plaintiff Violated Rule 11(b)(2).**

Second, the Court *sua sponte* sanctions the Plaintiff for using fictitious case citations and relying on legal mischaracterizations in violation of Rule 11(b)(2). Under Rule 11(b)(2), whenever

---

[13] For example, the Sale Order directly contradicts Counts I and II of the Second Amended Complaint, stating that the consideration for the Acquired Assets constituted "reasonably equivalent value and fair consideration[.]" (ECF No. 50-5 at 40–41.) Judge Lopez confirmed that the Sale Order did not support the Plaintiff's allegations. (ECF No. 50-7 at 18.) Looking at Counts II and IV, the Plaintiff recites the same invalid argument but under different legal theories—that the distributions of sale proceeds under the Plan violate both the absolute priority rule and the statutory requirements for class treatment under 11 U.S.C. §§ 1123(a)(4) and 1129(b)(2). But the Confirmation Order and Judge Lopez's Bench Ruling expressly found that none of the statutory provisions—or the absolute priority rule—were violated. (ECF No. 50-4 at 14 ("The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code . . . [it] provides for the same treatment by the Debtors for each Claim or Interest in each respective Class[.]")); (*see also id*. at 8 ("The Debtors . . . have met their burden of proving the applicable elements of sections 1129(a) and 1129(b)[.]")); (*see also* ECF No. 50-7 at 20 ("The Supreme Court said you can't authorize Plan-type distributions under a Sale Order. It's got to be under a Plan. It has to go through 1129 scrutiny. But that's exactly what happened in this case . . . distributions were made and approved under a court-approved Chapter 11 Plan that was voted on by creditors[.]").) Finally, Judge Lopez ruled that there is "no evidence that wind-down professionals are not making distributions based on the actual terms of the Plan." (ECF No. 50-7 at 19.)

a party presents a pleading or motion to the Court, the party certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument[.]" FED. R. CIV. P. 11(b)(2). The Plaintiff violated that standard here. The Court also has authority to sanction pursuant to General Order 2025-04 in the Southern District of Texas. *See* S.D. Tex. General Order 2025-04 ("Any . . . self-represented litigant who signs a pleading, written motion, or other paper submitted to the Court will be held responsible for the contents of that filing under Rule 11, regardless of whether generative artificial intelligence drafted any portion of that filing."). Procedurally, the Court satisfied its notice requirements under Rule 11(c)(5)(B) when it ordered the Plaintiff to show cause as to why sanctions should not issue in this case. (*See* ECF No. 94.) The Court is therefore well within its bounds to issue a monetary sanction against the Plaintiff.

The Plaintiff acted unreasonably when using and relying on nonexistent or misstated case law. The Plaintiff's Second Amended Complaint is littered with fictitious case citations and misapplied case law. This alone is enough for sanctions because "'no brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether provided by generative AI or any other source—that' a lawyer has not personally 'read and verified.'" *Whiting v. City of Athens*, 170 F.4th 455, 461 (6th Cir. 2026) (quoting *Noland v. Land of the Free, L.P.*, 114 Cal. App. 5th 426, 336 Cal. Rptr. 3d 897, 901 (2025)) (emphasis in original). Other circuits have also found conduct like the Plaintiff's unreasonable. *See In re Nwaubani,* No. 25-9517, 2026 WL 687194 at *4 (4th Cir. Mar. 11, 2026) (per curiam) ("A reasonable attorney, in preparing or reviewing his brief, should have discovered the errors."); *see also Whiting*, 170 F.4th at 463 ("Any reasonable attorney should know that a case is meritless if the only authority on which he can rely is a figment of imagination.").[14]

---

[14] While these cases refer to a lawyer, and not a *pro se* party, they are still applicable to the Plaintiff's conduct, since Rule 11 applies to both lawyers and *pro se* litigants alike. *Fermin*, 1994 WL 24922 at *2. Moreover, while these

The Plaintiff provides, at best, disingenuous defenses for his actions. His first contention that the "claims asserted are brought in good faith" [ECF No. 95 at 4] does not pass muster.[15] *See, e.g.*, *Willis v. U.S. Bank Nat'l Ass'n as Tr., Igloo Series Tr.*, 783 F. Supp. 3d 959, 961 (N.D. Tex. 2025) ("'[C]arelessness, good faith, or ignorance are not an excuse for submitting materials that do not comply with Rule 11." (citation omitted)). Pointedly, a party's "good faith is . . . [not] enough to protect him from Rule 11 sanctions." *Childs v. State Farm Mut. Auto. Ins.*, 29 F.3d 1018 (5th Cir. 1994) (citation omitted).

The Plaintiff's actions are also not reasonable simply because "some of the cases [he] cited existed, and some of the propositions of law [a]re legitimate." *See Whiting*, 170 F.4th at 461 (affirmatively rejecting the "notion that because some authority exists to support a legal proposition it should negate the harm caused by false and hallucinated cases" (quoting *United States v. McGee*, 806 F. Supp. 3d 1264, 1273 (S.D. Ala. 2025))). The Court also gives no credence to the Plaintiff's timing argument that his improper case citations occurred because he sought "to meet briefing deadlines." (ECF No. 95 at 2.) Multiple extensions have been sought and granted in this case, including for the Plaintiff, and the Plaintiff amended his complaint twice.[16] (*See, e.g.*, ECF Nos. 23, 30, 40, 71.)

---

appellate courts have relied on different sanctioning authorities, such as FED. R. APP. P. 38 or a court's inherent authority, the analysis remains the same under Rule 11 since the circuit court "approach to evaluating misrepresentations parallels the inquiry district courts conduct under Federal Rule of Civil Procedure 11." *Perez-Castillo v. Blanche*, --- F.4th ----, 2026 WL 1533877, at *6 (7th Cir. June 1, 2026).

[15] The Plaintiff makes a novel argument that he commenced this action in good faith as a whistleblower. (ECF No. 95 at n.11.) He contends that while the bankruptcy court orders are "operative and controlling," according to "his understanding . . . [the] applicable law provides protections for individuals who raise such concerns in good faith." (*Id.*) The Court does not know why the Plaintiff believes he is a whistleblower, nor on what law he relies. It is unclear again whether the Plaintiff uses artificial intelligence to fuel his understanding of the law.

[16] The Plaintiff was even given additional time to respond to the Defendants' Motion for Sanctions [ECF No. 71], yet he still included thirteen improper citations.

To make matters worse, after the Court issued its Show Cause Order, the Plaintiff continued to waste the Court's resources by drawing trivial lines in the sand.[17] (*See* ECF Nos. 96, 97, 98.) The Plaintiff effectively asks the Court to verify the accuracy of ***his*** case citations and fix ***his*** legal mistakes. For example, the Plaintiff "withdrew the authorities identified in the Court's Show Cause Order" but then made a ***blanket withdrawal*** of those authorities "anywhere [else] in the record," request[ing] that the Court give them no weight in resolving any pending or future motions. (ECF No. 98 at 2–3.) The Plaintiff essentially asks this Court to pick through the legal fallacies on which this case rests, as if these legal fallacies have not already diseased this case beyond salvation, and consider what remains. The Court will do no such thing.[18]

The Plaintiff's request belittles this Court's concerns. The Plaintiff contends "[t]he Court's concerns relate to discrete citations in prior briefing rather than the operative Second Amended Complaint (Dkt. 30), which is grounded primarily in documentary allegations and the factual record." (ECF No. 95 at 2.) This statement underlines that the Plaintiff has no appreciation for the magnitude of harm he has imposed on this Court and the Parties to this lawsuit. "Courts demand honesty, and injections of nonexistent and improperly attributed authority into court filings vandalizes the very machinery of truth upon which this Court—and all courts—rely." *Hanson v. Nest Home Lending, LLC*, No. 25-CV-02599, 2025 WL 3312165, at *5 (D. Colo. Nov. 28, 2025),

---

[17] The Plaintiff fails to understand that his reliance on incorrect citations plagues the legal arguments he makes based on those inapplicable cases. For example, the Plaintiff deletes his citation to *In re T-H New Orleans*, but does not change the argument he makes in Count III, which is based on the inapplicable legal proposition he cited from that case. Another example is the Plaintiff's refusal to concede he misapplies and misunderstands *Serta* and *Aweco*. (*See* ECF No. 95 at 3.) Judge Lopez and the Honorable Eduardo Rodriguez, Chief U.S. Bankruptcy Judge for the Southern District of Texas, have explained to the Plaintiff multiple times that he misunderstands and misapplies *Aweco*, yet he continues to file cases based on his faulty understanding. The law is the law. The Plaintiff cannot simply delete his incorrect references to now create a meritorious case.

[18] If not already obvious, the Show Cause Order did not include a complete and exhaustive list of the misapplied and fictitious cases in the Plaintiff's pleadings but demonstrated the severity and magnitude of the legal mischaracterizations prevalent throughout this case. (ECF No. 94 at 6.)

*report and recommendation adopted*, 2025 WL 4083608 (Dec. 23, 2025). A "federal court is not a workshop for fictional writing." *Id.* To urge this Court to "proceed . . . regardless of how the Court ultimately evaluates the authorities it has identified as problematic" [ECF No. 95 at 10] and to claim "that the concerns identified by the Court relate to citation precision and typographical issues rather than the underlying factual record" [*id.* at 13] is ludicrous.

Fictitious citations and misapplied law do nothing more than mislead the Court and waste judicial resources. This Court has "one of the busiest court dockets in the nation," making the harm especially egregious in this case considering "there are scant resources to spare ferreting out erroneous AI citations . . . let alone surveying the burgeoning caselaw on this subject." *Elizondo v. City of Laredo*, No. 5:25-CV-50, 2025 WL 2071072 at *3 (S.D. Tex. July 23, 2025). As such, the Plaintiff is **SANCTIONED** for violating Rule 11(b)(2).

**C. Plaintiff's Cross Motion for Sanctions is Denied.**

Finally, the Plaintiff moves for sanctions against the Defendants for seeking sanctions "for conduct occurring outside this Court, rel[ying] on a non-final and appealed order from another tribunal, mistat[ing] core Rule 11 standards, and attempt[ing] to expand the Rule far beyond its permissible limits." (ECF No. 75 at 16.) The Court **DENIES** Plaintiff's motion for cross-sanctions because he did not serve defendants with the motion under the 21-day safe harbor period. (ECF No. 77 at 20); FED. R. CIV. P. 11(c)(2) ("The motion . . . must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.").

**D. Sanctions**

For the reasons above, the Court finds the Plaintiff's conduct in this case sanctionable. A court may impose sanctions under Rule 11 that "suffice[] to deter repetition of the conduct or

comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4). Courts have a variety of different means to impose sanctions, including nonmonetary directives, penalties paid to the court, and, if "imposed on motion," penalties paid to parties for "all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

"Federal courts have the power to enjoin plaintiffs who abuse the court system and harass their opponents. This includes enjoining future filings to protect its jurisdiction and control its docket." *Clark v. Mortenson*, 93 F. App'x 643, 654 (5th Cir. 2004) (citation omitted). That sanction "must be tailored to protect the courts and innocent parties," while also considering "the legitimate rights of litigants." *Id.* When considering the type of sanctions to issue against a *pro se* party, a court may look to prior litigation history. *See, e.g.*, *Williamson v. Wilmington Savs. Fund Soc'y FSB as Trustee of Stanwich Trust A*, No. 25-30386, 2025 WL 3486764, at *2 (5th Cir. Dec. 4, 2025) (affirming district court's filing injunction against a *pro se* litigant who filed frivolous claims that were denied with prejudice); *Annamalai v. Moon Credit Corp.*, No. H-16-1277, 2017 WL 5646925, at *3–4 (S.D. Tex. Apr. 21, 2017) (relying on the plaintiff's criminal judgment, vexatious-litigant order, and prior federal cases to impose Rule 11 sanctions and filing injunction).

**i. Sanctions Requested by DIP Lender Defendants and Defendant Penney Intermediate Holdings.**

The Court first turns to the sanctions that the DIP Lender Defendants and Defendant Penney Intermediate Holdings request. The Defendants move for two sanctions: (1) to "enjoin Moore from filing future lawsuits on these issues and claims (arising from the same core nucleus of facts) in federal or state court without leave of this Court; . . . (2) [and to] order Moore to pay the [DIP Lender] Defendants' and [Defendant] Penney [Intermediate] Holdings' reasonable

attorneys' fees and costs incurred in responding to the Second Amended Complaint and bringing this motion." (ECF No. 64 at 37.)

The Plaintiff engaged in sanctionable conduct, and an award of attorney's fees is warranted under Rule 11. The DIP Lender Defendants and Defendant Penney Intermediate Holdings are to file, **within 20 days**, their evidence, in admissible form, regarding attorneys' fees and costs that they incurred in responding to the Second Amended Complaint and the Plaintiff's violations of Rule 11. The requested fees must be limited to those applicable to this federal action and the conduct found sanctionable in this Order. Thereafter, the Court may determine the appropriate monetary sanctions to be awarded.

A pre-filing injunction—regarding these specific issues and claims—is also warranted because the Plaintiff violated Rules 11(b)(1) and (b)(3) in frivolously filing this lawsuit. This is not the first time the Plaintiff has abused the federal courts. The Plaintiff was involved in a series of lawsuits in the U.S. District Court and the U.S. Bankruptcy Court for the Middle District of Florida that resulted in sanctions. *In re Herrera-Edwards*, 578 B.R. at 865–66. There, the bankruptcy court imposed monetary sanctions after the Plaintiff failed to comply with court orders. *See In re Bambi A. Herrera- Edwards*, No. 8:12-bk-15725 (Bankr. M.D. Fla. Nov. 2, 2018) (holding Plaintiff Eric Lyndell Moore in contempt and punishing him with monetary sanctions for filing a separate lawsuit in violation of the automatic stay and continuing to litigate after being held in contempt of the court). The sanctions started at $5,000, plus $100 a day until the Plaintiff withdrew his motions with prejudice. When the Plaintiff's sanctionable conduct continued, the court imposed another $5,000, and then another $25,000 when he ***still*** failed to comply. In the end, the Plaintiff was sanctioned $78,000 after ignoring ***three*** sanctions orders. (No. 8:12-bk-15725 (ECF Nos. 798, 846, 888, 1098, 1099).) It remains unclear whether the Plaintiff ever paid

any of those sanctions. Regardless, the Plaintiff's nonchalance to previously being held in contempt, apathetic response to previous monetary sanctions, and retaliation against Judge Lopez factor into this Court's analysis regarding the necessity of a pre-filing injunction for facts related to this case. Given this case's procedural background, as well as the Plaintiff's blatant disregard for the rule of law in previous court proceedings, the Court finds this pre-filing injunction to be the most appropriate. Thus, the Plaintiff is **ENJOINED** from filing ***in any subsequent litigation arising from the same core nucleus of facts of this case*** in federal or state court without leave of this Court.

**ii. Sanctions Brought *Sua Sponte* by the Court.**

The Court finally imposes a penalty payable to this Court for the Plaintiff's violations of Rule 11(b)(2). "When, as here, the court *sua sponte* issues the show-cause order, 'sanctions are limited to nonmonetary directives or penalties paid to the [c]ourt.'" *Esparza v. Contreras***,** No. 23-CV-98, 2023 WL 9316921, at *6 (S.D. Tex. Dec. 28, 2023) (citation omitted), *report and recommendation adopted*, 2024 WL 287697 (S.D. Tex. Jan. 25, 2024). As explained above, Plaintiff filed briefs without legal justification—riddled with false quotations and made-up cases—and asserted completely inaccurate legal holdings. Courts across the country have imposed monetary sanctions for similar behavior. *See*, *e.g.*, *Kruse v. Karlen*, 692 S.W.3d 43, 52, 54 (Mo. Ct. App. 2024) (sanctioning *pro se* party $10,000 in attorney's fees and dismissing appeal where *pro se* party's brief included 22 fictitious case citations); *Wadsworth v. Walmart, Inc.*, 348 F.R.D. 489 (D. Wyo. 2025) (imposing a total of $5,000 in fines); *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 24-CV-326, 2025 WL 1511211 (S.D. Ind. May 28, 2025) (imposing a penalty of $6,000).

The Court here concludes that a **PENALTY** of **$7,500** issued against the Plaintiff is proportionate to his conduct, while also serving as an effective deterrent. This amount considers the Plaintiff's *pro se* status and his apology to the court, but also his lack of sincerity as evidenced by his failure to rectify mistakes despite being on notice of his improper case law citations, and his trivialization of the Rule 11 issues.

Considering nonmonetary sanctions, the Court also finds appropriate the imposition of a pre-filing injunction on the Plaintiff. Given this case's procedural background, as well as the Plaintiff's blatant disregard for the rule of law in previous court proceedings, the Court finds this pre-filing injunction to be the most appropriate. Thus, the Plaintiff is **ENJOINED** from filing ***in any subsequent litigation*** in the Southern District of Texas without leave of this Court.

## IV. Conclusion

The DIP Lender Defendants, Defendant Penney Intermediate Holdings, and Defendant Jackson Walker's Motions to Dismiss [ECF Nos. 50, 63] are **GRANTED**. This action is hereby **DISMISSED WITHOUT PREJUDICE** as to all Defendants.[19]

IT IS **ORDERED** that the DIP Lender Defendants and Defendant Penney Intermediate Holdings' Motion for Sanctions [ECF No. 64] against *pro se* Plaintiff Eric Lyndell Moore is **GRANTED**. Plaintiff's request for cross-motion for sanctions against the same defendants in his Response to the Motion for Sanctions [ECF No. 75] is **DENIED**.

IT IS **FURTHER ORDERED** that Mark E. Morice's Motion to Appear *Pro Hac Vice* [ECF No. 82] is **DENIED as MOOT**.

IT IS **FURTHER ORDERED** that Plaintiff is hereby ordered to pay **$7,500** in monetary

[19] "When a district court dismisses a case for lack of subject matter jurisdiction, the proper course is to dismiss the case without prejudice." *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 191 n.4 (5th Cir. 2023). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

sanctions for violating Rule 11(b)(2) to the Clerk's Office for the Southern District of Texas. Check or Money Order should be made out to the Clerk of Court. In-person payment can be made at the following address: 515 Rusk, Room 5300, Houston, TX 77002. The Plaintiff shall pay the amount to the Clerk's Office **within 14 days** of this Order. The case number and a copy of this Order should be included with payment.

IT IS **FURTHER ORDERED** that the DIP Lender Defendants and Defendant Penney Intermediate Holdings shall submit a detailed bill of costs **within 20 days**, with accompanying affidavit(s), showing what costs and expenses were incurred as a reasonable result of responding to the Second Amended Complaint and the Plaintiff's violations of Rule 11 as detailed in this Order. A forthcoming order will determine the Plaintiff's sanction for attorneys' fees.

IT IS **FURTHER ORDERED** that Plaintiff is **ENJOINED** from filing ***any subsequent litigation arising from the same core nucleus of facts of this case*** in federal or state court without leave of this Court.

IT IS **FURTHER ORDERED** that Plaintiff is **ENJOINED** from filing ***any subsequent litigation*** in the Southern District of Texas without leave of Court. To acquire leave of Court, Plaintiff must file a petition demonstrating that (1) the suit is not legally frivolous; (2) the suit is not barred by the applicable doctrine of *res judicata* or collateral estoppel; and (3) the court has subject-matter jurisdiction.

IT IS **FURTHER ORDERED** that Plaintiff is to provide a copy of this Order to the Honorable Judge Andrew S. Hanen in the case styled *Moore v. Lopez*, case number 4:25-CV-4541, in the Southern District of Texas. Similarly, Plaintiff must provide a copy of this Order to the Honorable Judge Nelva Gonzales Ramos in the case styled *Moore v. Copper Property CTL Pass Through Tr.*, case number 2:25-CV-253, in the Southern District of Texas. Plaintiff must file

certification, with proof, on this docket **within 14 days** from the signing of this Order that he provided copies of the Order to the respective judges. Failure to comply with these court orders may result in additional sanctions and finding the Plaintiff in civil contempt.

SIGNED and ENTERED on this 21st day of October 2026.

ALIA MOSES
Chief United States District Judge